LEE, J.
Two questions occur in this case, first, whether the records of the cases of Rawsou v. Dawson and Rawson v. Hitch-cox mentioned in the plaintiff’s first bill of exceptions were properly excluded from the jury, and second, whether the deed from Chapman as attorney in fact for Susan Mitchell to the plaintiff of the 15th of August 1848 was properly rejected when offered to prove the transfer of the legal title to the *796 land therein described to the plaintiff. Of these in the oi'der stated.
It is a well settled rule of evidence that a verdict and judgment in an action at law cannot be received in evidence upon the trial of an action between others not parties to the first, nor standing in privity with those who were, for the purpose of proving any fact upon which such verdict and judgment were founded and which being essential to their rendition, is to be regarded as established by them. The party in the second action had no opportunity of cross examining the witnesses in the first, nor of confronting them with others by whom the facts deposed to by them might have been effectually disproved. 1 Greenleaf Ev. & 522, et seq.; Duchess of Kingston’s Case, 20 How. St. Tr. 38, and n. 1. Moreover, although the witnesses in the first cause might all have tieen competent to give evidence in the second, yet it might have *been otherwise, and the verdict and judgment may have been founded upon the testimony of the party himself who offers the record in the second cause or some other witness who would be equally incompetent. But this enquiry the court cannot stop to make. It would be opening a door to subjects and questions entirely apart from the true issue before the jury, and might lead into a wide field of irrelevant enquiry and discussion. Because therefore of the potential vice in the record as an instrument of evidence in the second cause the court has no alternative but to exclude it. Where the fact of such verdict and judgment having been rendered is proper and relevant evidence, as they can only be proved by the record, it may be admitted for that purpose, but when so admitted it cannot be used as evidence to prove any fact or allegation however material or traversable, upon which they must be supposed to have been rendered. Greenleaf Ev. I 538, 539, 527; 1 Stark. Ev. 213.
To this general rule there are some exceptions, as in the class of cases known as proceedings in rem, such as judgments of condemnation of property as forfeited, a prize in the exchequer or admiralty courts, and adjudications upon the personal relations of a party such as marriage, divorce, settlement and the like. 1 Greenleaf Ev. jj 525, 541 and n, § 544 and n, § 545. Another exception it is said has been made in the case of verdicts and judgments upon subjects of a public nature, such as matters of reputation, customs and the like. 1 Greenleaf, \ 526. Whether the latter class of exceptions can have any place in this state at this day, it is deemed not very material to enquire. Eor the verdicts and judgments offered in this cause can be brought within the range of neither of these classes. They were not cases in any sense in the nature of proceedings in rem, nor were they upon subjects of a public nature within the meaning of the exception contended *for. They were strictly suits inter partes, concerning private rights only; and they must fall within the class of cases, the verdicts and judgments in which, are evidence of the facts on which they were founded, only as between those who were parties, or who stand in privity with those who were.
The purpose for which these records were offered was to prove the boundaries of the ten thousand acre survey made for Hugh Eenox which the land claimed by the plaintiff was said to adjoin; and it was sought to do this by showing that in those causes, that survey had been located by the verdicts in the same manner in which the plaintiff sought to locate it in this action, and thus to make them evidence of the boundaries claimed as established by the findings of the juries in the two causes produced. This was in direct contravention of the rule of evidence just adverted to and violative of all the principles on which it is founded.
Nor could these records have been admitted upon the principle which admits, in certain cases, evidence of hearsay, reputation, tradition. It is true the principle of the admissibility of such testimony in cases of a public nature has been extended by our courts to questions of private boundary; but it is difficult to perceive how this can render admissible the verdicts and judgments in cases between others, although the same boundary may have been the subject of dispute. Such verdicts and judgments may have been founded upon the hearsay or tradition given in evidence, or upon evidence of a totally different character. The identity of the boundary as claimed on the ground with that described in the muniments of title relied on, may have been established by the conformity of natural objects actually found with those called for. It may have been made out by artificial monuments shown to exist as marked trees of the kind called for, the annulations on which were found to agree with *the years elapsed since the date of the survey relied on. It may have been deduced from a connection with one or more adjoining surveys the location and boundaries of which were sufficiently proven or undisputed. Or it. may have been determined from several of these different sources of evidence, or all, combined. Again. The proofs of hearsay or tradition, or whatever they were, were from the mouths of witnesses who might or might not be competent to give testimony in the particular case: but the party had no opportunity to show their incompetency to testify against him, or to cross examine them or to meet their statements by opposing proofs. Now, as we have seen, the court will not enter upon enquiries as to the nature of the proofs in the former case or the competency of the witnesses who then deposed to give evidence in the principal case. To attempt it would only lead to indefinite delays and breed inextricable confusion. That the former verdicts and judgments may have been obtained under such circumstances as should preclude them from being evidence in the principal case and that the court can *797 not undertake to analyze the proceeding1 of which they were the result, renders their rejection a matter of inevitable consequence.
In the case in judgment the records which were offered in evidence were in cases between totally different parties, nor is any privity shown between any of them and any party' in this cause. They show nothing of the nature of the proofs exhibited, nor do they' disclose who were the witnesses examined. There is no savor of antiquity about them if that would have helped the argument, for they were rendered within the year before the trial of this case. The same sources of proof which were turned to so good account in those cases were, it may' be supposed, equally accessible to the parties in this. If the witnesses in 1hem were competent to give evidence in *this case, they might have been examined, and the jury left to draw their own inferences from their testimony' without being influenced by the finding of another jury upon the same testimony'. If they were not examined no reason has been shown for the omission even if the court would go into that enquiry. If they would not have been competent, that itself would be a conclusive reason for excluding the verdicts founded upon their testimony.
The rules of evidence have to a certain extent been relaxed on questions of boundary', but it is deemed unwise and inexpedient to extend the encroachment upon well settled and wholesome principles further than the courts have already gone. That the monuments of boundaries owing to the perishable materials of which they were made, may gradually disappear, has led to the admiss:on of traditionary evidence concerning them, but it can furnish no sufficient reason for breaking down the well established barrier which restricts the effect of a verdict and judgment as evidence of the facts in issue in the cause, to those who were parties or stood in privity with those who were.
The second question relates to the exclusion of the deed from Chapman as attorney in fact for Mrs. Mitchell. If he had due authority as such, the deed should have been permitted to go to the jury, as it was in regular and proper form. If he had not, then Mrs. Mitchell was not bound, her title did not and could not pass by it, and as it was offered for no other purpose than to prove a transfer of her title to the plaintiff, it was properly excluded.
To show that Chapman was authorized to execute a deed for Mrs. Mitchell, the letter of attorney from John Mitchell of the 9th of June 1846 was first read in evidence to the jury. By the letter of attorney from Mrs. Mitchell to John Mitchell, the latter had the power to appoint such further agents and attorneys as *he might deem necessary to carry into effect the power granted to him. The question then is was this power to appoint agents and attorneys duly' executed as the law then stood by the letter of attorney to Chapman.
The power given to John Mitchell to appoint an agent who would be authorized to convey the leg'al title vested in Mrs. Mitchell, must of necessity have been executed by a deed, for no agent can bind his principal by deed unless he be so authorized by' an instrument of equal solemnity. And as the law was then understood, to bind the principal every deed should be executed for and in the name of his principal, though it was not material whether the attorney sign the name of his principal with a seal annexed, stating it to be done by him as attorney for the principal, or whether he sign his own name with a seal annexed, stating it to be done for the principal. But if the deed do not purport to be the deed of the principal and be signed and sealed by' the attorney neither in the • name of his principal nor in his own name as his attorney it is not the deed of the principal. And in executing the power conferred, the attorney should conform to the terms and nature of his authority, and do that which it w'as the intention and legal effect of the power he shold be authorized to do in a legal and proper manner. Otherwise the act will be ineffectual to bind the principal.
Now the letter of attorney to Chapman does not purport to be the act of Mrs. Mitchell or for her or in her name. It purports to be the act of John Mitchell in his own name and on his own behalf. He axjpoints Chapman “his attorney,” to sell, &c., “for his advantage and profit, ” to make seal and deiiver deeds “as his deeds,” to receive moneys coming “to him” on account of sales “for him and in his name,” and “for him and in his name” to make seal and deliver acquittances. Nor is it signed with the name of Mrs. *Mitcbell stated to be by her attorney nor is his name stated to be for his principal. It is signed by him in his own name as if the instrument were executed in his own right and on his own behalf. Such an execution of the power could not bind Mrs. Mitchell nor invest Chapman with authority to transfer the legal title to the land. If John Mitchell had conveyed the land by a deed executed in the form adopted for this power, such a deed prior to the provision of our present Code, would not have passed the legal title. And a power executed by' him under his authority' to appoint other agents for his principal should be executed for or in the name of the principal just as should a direct deed of conveyance from himself. Whether a conveyance or a power to some other to convey it was but the execution of his power by deed, and that deed to be effectual must be executed in the manner required by the rules of law.
What might be the construction of such an instrument executed since our present Code took effect it is unnecessary to enquire as the paper in question was executed in 1846; but it cannot be sustained on the authority of Shanks v. Lancaster, S Gratt. 110, or of Bryan v. Stump, 8 Gratt. 241. as it is a different instrument from those *798 in question, in those cases and executed in a different manner. Prior to the Code at least, the question was not simply what the grantor intended to do, but whether the intent to execute the power was carried out in a legal and proper manner. In everj' case of a deed executed by an attorney it might be supposed that he intended to conform to his power and satisfy its requirements ; but if he have failed to execute it in the manner required by the rules of law, it must be ineffectual, for his intention could not remedy the defective Code in which he attempted to carry his intention into execution. I refer on this subject to Sergeant Moore’s Rep. Trin. 6 Eliz. *No. 191, p. 70; Coombe’s Case, 9 Rep. 75; Frontin v. Small, 1 Str. R. 705; S. C. 2 Ed. Raym. R. 1418; White v. Cuyler, 6 T. R. 176; Wilks v. Back, 2 East. R. 142.; 5 Bouv. Bac. Ab. “Leases,” I. 10, p. 571; Bogart v. De Bussy, 6 John. R. 94; Fowler v. Shearer, 7 Mass. R. 14; Elwell v. Shaw, 16 Mass. R. 42; Jones’ dev. v. Carter, 4 Hen. & Munf. 184; Clarke’s lessee v. Courtney, &c., 5 Peters’ R. 318, 349; Martin v. Flowers, 8 Leigh 158. In the two cases last cited, the deeds were held inoperative because although purporting to be made by the parties as attorneys for their principals, they were yet executed by the attorneys in their own names and not in those of their principals.
That a spirit of self-reliance and directness of purpose, as suggested by counsel in argument, will prompt the people of this age and country to disregard the formalities of conveyancing and the rules of law by which they are prescribed, can constitute no sufficient reason nor furnish any adequate authority to the courts to change the law or overthrow plain intelligible and well settled legal principles. That is the province of the legislature, not of the judiciary. For the latter to undertake to mould the law so as to be adapted to the loose and careless modes of conducting business transactions which are said to prevail would be but to inaugurate uncertaintjr and confusion in the administration of justice, and lead to evils which though not at once foreseen and appreciated, might prove far greater and more to be deplored than the hardship which may occur in individual cases from an adherence to the settled rules of law, but which at last must be traced to the parties’ own improvidence and want of reasonable care and precaution.
The result is that the letter of attorney from John Mitchell to Chapman being ineffectual to constitute the latter the attorney for Mrs. Mitchell, the deed which he undertook to make for her did not transfer *the legal title to the plaintiff, and as it was offered for no other purpose than to prove such transfer, it was properly rejected by the court.
I think the Circuit court did not err in its ruling upon 1 either of the questions raised, and am of opinion to affirm the judgment.
The other judges concurred in the opinion of Lee, J.
Judgment affirmed.